KAUTZ, Justice, concurring in part and dissenting in part.
[¶51] I concur with the majority opinion that the district court took an incorrect approach *1287 to damages, and that the e-mails should have been admitted into evidence. I also concur with the majority opinion on defamation. However, I cannot find issues of material fact regarding Dr. Stevens' liability and dissent from that portion of the majority opinion.
Wyo. Stat. Ann. § 17-29-409 (LexisNexis 2017)
[¶52] Fiduciaries owe "an unwavering duty of complete loyalty to the beneficiary ... to the exclusion of the interests of all other parties." Forbes v. Forbes , 2015 WY 13, ¶ 58, 341 P.3d 1041, 1058 (Wyo. 2015). "Self-dealing by ... any fiduciary is always suspect ...." Id., ¶ 59, 341 P.3d at 1058. Those strong requirements were incorporated into § 17-29-409. Section 17-29-409 required Dr. Stevens to account for and hold as a trustee (for ACC) any profit he derived from the appropriation of a limited liability company opportunity.
[¶53] I agree with the majority's use of the test we established in Acorn v. Moncecchi , 2016 WY 124, ¶ 49, 386 P.3d 739, 754 (Wyo. 2016). This test requires a business or trust claiming its fiduciary improperly obtained a business opportunity (here, a limited liability company opportunity) to show it had: 1. an actual or expected interest in an asset or property; and 2. the financial ability to acquire the asset or property. The majority states that "[a]fter reviewing the record, we conclude that there are material questions of fact about both prongs of this test." I disagree. With respect to the first prong-having an actual interest in business with the Eye Center-the undisputed evidence showed ACC had a long-term, ongoing, and profitable arrangement with the Eye Center. It is beyond question that it had an actual interest in that business relationship. The majority notes there was no written contract, and members of ACC did not know what the terms of the arrangement with the Eye Center were. Those facts are not material to the issue of whether ACC had an actual interest in its business with the Eye Center, primarily because notwithstanding those facts ACC actually had a significant business relationship with the Eye Center. With respect to the second prong-having the financial ability to acquire (or, in this situation, keep) the asset-the undisputed evidence indicated that if it chose to do so, ACC could have continued to provide services to the Eye Center. The majority notes that one ACC manager questioned whether the Eye Center business would be as profitable as before if ACC had to hire someone to replace Ms. Rivers to work at the Eye Center. This fact goes to the damages, if any, suffered by ACC and not to the question of whether ACC had the ability to follow through with the Eye Center. I do not believe there were issues of material fact as to whether Dr. Stevens, as a fiduciary of ACC, violated these portions of § 17-29-409.
[¶54] Section 17-29-409 also prohibits Dr. Stevens from competing with the company in the conduct of the company's activities. The majority concludes that if there are questions of fact about whether the Eye Center business was in fact a business opportunity of ACC, then there necessarily are questions of fact about whether or not Dr. Stevens competed with ACC by taking over that business. Because I conclude there were no questions of fact on this issue, I similarly conclude there were no questions of fact that Dr. Stevens, while a fiduciary of ACC, violated § 17-29-409 by competing with it at the Eye Center. Questions about whether ACC would have continued with the Eye Center go to the measure of potential damages, and not whether Dr. Stevens developed a competing business.
Good Faith and Fair Dealing
[¶55] The majority finds summary judgment was improperly issued on ACC's claim that Dr. Stevens violated the implied covenant of good faith and fair dealing. This conclusion is based on the statement "there are questions of fact about whether ACC justifiably expected to continue receiving the revenues from the Eye Center, particularly once it had notice that the arrangement between ACC and Ms. Rivers was going to come to an end." One cannot avoid violation of the covenant of good faith and fair dealing simply by telling other contracting members that "I'm going to start taking over this business that you all have been profiting from." It is the act of making such a statement, *1288 and following through on it, that constitutes violation of the covenant. The district court's decision correctly found there was no question of fact here. It said "The parties' common purpose was to run a profitable business by providing anesthesiology services to the medical community of Cheyenne. ACC's justified expectations were to continue operating that profitable business, including servicing the Eye Center's business as it had done since 1999 and to continue receiving the benefits of its longstanding business relationships, by collecting revenues, including those derived from the Eye Center. Dr. Stevens' diversion of the Eye Center's business and revenues [was] a violation of ACC's justified expectation and is therefore a violation of the obligation of good faith and fair dealing owed to ACC."
Ratification
[¶56] I find no issue of fact for trial on the issue of ratification. Section 17-29-409(f) provides that ratification occurs only by all members of an LLC, after full disclosure. There was no question of fact that Dr. Stevens did not disclose to all of the members prior to January 2014, when he took over ACC's income from the Eye Center. There was no question of fact that all members did not know of Dr. Stevens' actions, and could not have possibly ratified them, implicitly or otherwise, until at least June 2014. It was appropriate to issue summary judgment on the matter of ratification for the period from January to June 2014. There were no issues of fact about ratification during that period. I agree, though, that issues of fact existed about potential ratification after June 2014.